**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 22-cr-92 (DLF)** |
| v. | : | |
| | : | |
| **BRIAN GLENN BINGHAM,** | : | |
| | : | |
| Defendant. | : | |

## UNITED STATES' MOTION IN LIMINE TO EXCLUDE
## MENTAL HEALTH EVIDENCE OR TESTIMONY

The United States respectfully requests that the Court preclude Defendant Brian Bingham from eliciting evidence or making argument concerning any mental health defense. The Court should preclude any mental health evidence for several reasons. *First*, to the extent that Bingham plans to present mental health evidence going to his diminished capacity at the time of the alleged offenses, he provided no notice to the government as required by Federal Rule of Criminal Procedure 12.2. *Second*, diminished capacity evidence applies only to specific intent crimes, not general intent crimes. Bingham's mental health has no bearing on whether he forcibly assaulted a law enforcement officer under 18 U.S.C. § 111(a)(1) or knowingly trespassed in a restricted area under 18 U.S.C. § 1752(a)(1). *Third*, lay witness testimony regarding Bingham's mental health is inadmissible under the Insanity Defense Reform Act ("IDRA") and the Federal Rules of Evidence. *Finally*, mental health evidence would confuse and mislead the jury, rendering it inadmissible under Federal Rule of Evidence 403.

## BACKGROUND

Defendant Brian Bingham participated in the riot at the U.S. Capitol on January 6, 2021, which disrupted the certification of the 2020 presidential election. At approximately 2:42 p.m. on January 6, Bingham unlawfully entered the Capitol and made his way to an area just outside the Speaker's Lobby, which leads directly to the House Chamber. While there, Bingham took photographs and shouted at police officers guarding the entrance to the Speaker's Lobby, where another rioter had just

been shot by law enforcement. Several minutes later, Bingham engaged officers in a physical altercation as those officers tried to clear the crowd out of the Capitol. Despite verbal commands by officers to leave the building, Bingham confronted, grabbed, pushed, and struck a D.C. Metropolitan Police Department ("MPD") officer. As Bingham continued the altercation, several other officers came to assist and were eventually able to push Bingham out of a doorway. Later that same day, Bingham exchanged several messages bragging about his conduct. In those messages, Bingham recognized that his actions were both assaultive and unlawful. For example, immediately after the assault, at approximately 3:00 p.m., Bingham texted a friend, "Just scuffed cops, still free." Hours later, when the same friend asked whether Bingham "[threw] any hands," Bingham responded, "I manhandled 5 cops . . . And they did not want me to stay lol." Bingham texted another acquaintance at approximately 5:32 p.m. explaining, "almost went to jail for scuffing up 4-5 with some baton hits."

A grand jury returned a six-count indictment against Bingham on March 18, 2022, charging him with (1) obstructing law enforcement during a civil disorder under 18 U.S.C. § 231(a)(3); (2) forcibly assaulting a law enforcement officer under 18 U.S.C. § 111(a)(1); (3) entering or remaining in a restricted area under 18 U.S.C. § 1752(a)(1); (4) engaging in disorderly and disruptive conduct while in a restricted area under 18 U.S.C. § 1752(a)(2); (5) engaging in disorderly and disruptive conduct in a Capitol building under 40 U.S.C. § 5104(e)(2)(D); and (6) parading, demonstrating, or picketing in a Capitol building under 40 U.S.C. § 5104(e)(2)(G).

Over the last year, Bingham's mental health has been raised as a potential issue in this case. Beginning on February 27, 2023, the Court ordered any motions relating to a competency examination to be filed by April 13, 2023, but such motions were never filed. On March 21, 2023, the Court granted a motion for substitute counsel and issued an order excluding time under the Speedy Trial Act so that defense counsel could conduct a competency examination. But it is not clear whether that examination ever occurred. On January 12, 2024, at Bingham's request, the Court continued the trial

so that the defense could retain an expert to conduct a psychological examination concerning Bingham's state of mind at the time of the alleged offenses. The Court subsequently issued a revised pretrial order requiring Bingham to disclose any expert report by February 12, 2024. *See* ECF No. 72 at 2. On February 16, 2024, defense counsel filed a notice explaining that a psychologist evaluated Bingham on February 12, 2024. Defense counsel further explained that he "is satisfied that Mr. Bingham was competent at the time he allegedly committed the offenses charged in the Indictment. Consequently, Mr. Bingham will not raise an insanity defense, as discussed in Federal Rule of Criminal Procedure 12.2." ECF No. 73 at 1. While the notice states that Bingham will not pursue an insanity defense, it says nothing about pursuing a diminished capacity defense or offering evidence at trial of Bingham's mental health.[1]

## **LEGAL STANDARD**

The presentation of mental health evidence is limited by the Federal Rules of Evidence and the IDRA, 18 U.S.C. § 17(a). Specifically, the IDRA limits the use of evidence pertaining to a mental disease or defect to when a defendant presents an affirmative defense of insanity. *See* 18 U.S.C. § 17(a). A narrow exception to the IDRA's general rule against mental health evidence exists when "the evidence is admitted not as an affirmative defense to excuse the defendant from responsibility for his acts, but to negate specific intent when that is an element of the charged act itself." *United States v. Childress*, 58 F.3d 693, 728 (D.C. Cir. 1995). In *Childress*, the D.C. Circuit held that such evidence must be limited to the "diagnoses, the facts upon which those diagnoses are based, and the characteristics of any mental diseases or defect the experts believe the defendant possessed during the relevant time period, staying clear of directly or indirectly opining on the [ultimate] issue of specific

---

[1] The notice also states that, "[b]ecause Mr. Bingham will not raise an insanity defense, he does not intend to disclose the contents of the [psychologist's] report to the Government or to any third party at this time." ECF No. 73 at 2.

intent." *Id.*[2] This narrow exception is known as the diminished capacity defense. It does not apply to general intent crimes. *See United States v. Hardy*, 730 F. Supp. 1141, 1144 (D.D.C. 1990) ("when a defendant is charged with a general intent crime, as is the case here, evidence concerning a defendant's mental condition becomes irrelevant and confusing to a jury").

Evidence that the defendant suffers from some mental illness is not, by itself, sufficient to trigger a diminished capacity instruction. *See United States v. Christian*, 749 F.3d 806, 815 (9th Cir. 2014). Rather, there must be a sufficient connection or link between the defendant's mental illness and his ability to form specific intent. *See United States v. Davis*, 78 F. Supp. 3d 17, 20 (D.D.C. 2015), *aff'd*, 863 F.3d 894 (D.C. Cir. 2017). Courts have excluded "testimony that was so general that it could not explain the effect a mental condition could have on a defendant's ability to form criminal intent." *United States v. Dupre*, 339 F. Supp. 2d 534, 541 (S.D.N.Y. 2004).

Courts have narrowly construed the diminished capacity defense because "even the most psychiatrically ill have the capacity to form intentions, and the existence of intent usually satisfies any *mens rea* requirement." *United States v. Pohlot*, 827 F.2d 889, 903 (3d Cir. 1987); *see also United States v. Mezvinsky*, 206 F. Supp. 2d 661, 673-75 (E.D. Pa. 2002). In *Pohlot*, the Third Circuit instructed district courts to "carefully scrutinize psychiatric defense theories bearing on *mens rea*." 827 F.2d at 890. The court explained that such evidence is prone to causing confusion because "[p]sychiatrists are capable of supplying elastic descriptions of mental states that appear to but do not truly negate the legal requirements of *mens rea*." *Id.* Thus, district courts may exclude such evidence because it "(1) will only rarely negate specific intent, (2) presents an inherent danger that it will distract the jury from focusing on the actual presence or absence of *mens rea*, and (3) 'may easily

---

[2] *See also* Fed. R. Evid. 704 ("In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.").

slide into wider usage that opens up the jury to theories of defense more akin to justification.'" *United States v. Cameron*, 907 F.2d 1051, 1067 (11th Cir. 1990) (quoting *Pohlot*, 827 F.2d at 904-05).

Federal Rule of Evidence 403 further narrows the opening for diminished capacity evidence and presents another significant hurdle to admissibility. "Even where evidence of a mental state is relevant to negate an element of specific intent, the court must not admit evidence that would cause undue prejudice or confusion." *United States v. Rogers*, No. 05-292 (RWR), 2006 WL 5249745, at *6 (D.D.C., Jul. 17, 2006); *see also United States v. Schneider*, 111 F.3d 197, 203 (1st Cir. 1997) (affirming exclusion of "impaired judgment" evidence because it would "mislead the jury into thinking that such a medical condition amounts to temporary insanity or ameliorates the offense.").

## ARGUMENT

### I.   BINGHAM HAS FAILED TO PROVIDE THE REQUIRED NOTICE FOR A DIMINISHED CAPACITY DEFENSE.

Federal Rule of Criminal Procedure 12.2 governs requests to introduce mental health evidence at trial. First, "[i]f a defendant intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on . . . the issue of guilt," he must notify the government. Fed. R. Crim. P. 12.2(b)(1). After providing notice, "the defendant must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use . . . at trial. This summary must describe the witness's opinions, the bases and reasons for those opinions and the witness's qualifications." Fed. R. Crim. P. 16(b)(1)(C).

As discussed above, Bingham never provided notice of his intent to pursue a diminished capacity defense or offer any mental health evidence under Rule 12.2(b)(1). Bingham's failure to provide notice is reason enough to preclude any diminished capacity or mental health evidence. *See United States v. Buchbinder*, 614 F. Supp. 1561, 1564-65 (N.D. Ill. 1985); *see also* Fed. R. Crim. P. 16(d) (noting that if a party fails to comply with Rule 16's disclosure requirements, the court may "prohibit that party from introducing the undisclosed evidence.")

## II.     MENTAL HEALTH EVIDENCE DOES NOT AFFECT THE GENERAL INTENT CRIMES ALLEGED IN THE INDICTMENT.

Any diminished capacity evidence offered by Bingham does not apply to the general intent crimes charged in the Indictment. Where, as here, a defendant is charged with a general intent crime, "evidence concerning a defendant's mental condition becomes irrelevant and confusing to a jury." *Hardy*, 730 F. Supp. at 1144; *see also United States v. Fazzini*, 871 F.2d 635, 641 (7th Cir. 1989) ("diminished capacity is a defense only to *specific* intent crimes").

Count II of the Indictment charges Bingham with forcibly assaulting a law enforcement officer under 18 U.S.C. § 111(a)(1). It is well settled that § 111 is a general intent crime requiring only that the defendant act with knowledge of his conduct. *See United States v. Kleinbart*, 27 F.3d 586, 592 (D.C. Cir. 1994) (concluding that "forcible armed assault on a federal officer under 18 U.S.C. § 111 is a general intent crime"); *United States v. Graham*, 431 F.3d 585, 589 (7th Cir. 2005) ("§ 111 is *not* a specific intent crime"); *United States v. Ettinger*, 344 F.3d 1149, 1158 (11th Cir. 2003) ("The language of § 111 only requires the knowing commission of the act"); *United States v. Kimes*, 246 F.3d 800, 809 (6th Cir. 2001) ("we conclude that the crime established in 18 U.S.C. § 111(a) is a general intent crime as to which evidence of diminished capacity is not admissible"); *United States v. Jim*, 865 F.2d 211, 215 (9th Cir. 1989) ("We hold that § 111 is a general intent crime and the court did not err in refusing to instruct the jury on the defense of voluntary intoxication").

When Bingham forcibly confronted, grabbed, and struck an MPD officer, he only had to act knowingly and voluntarily; he did not have to act with a specific "bad" purpose during the assault. *See Kimes*, 246 F.3d at 808. Indeed, the government need only prove "forcible assault by demonstrating that the defendant made such a threat or display of physical aggression toward the officers as to inspire fear of pain, bodily harm, or death." *United States v. Ricketts*, 146 F.3d 492, 497 (7th Cir. 1998) (affirming exclusion of diminished capacity defense relating to PTSD). Bingham's mental health is therefore not relevant to whether he forcibly assaulted a law enforcement officer on

January 6.

Count III of the Indictment charges Bingham with knowingly entering or remaining in any restricted building or grounds without lawful authority to do so under 18 U.S.C. § 1752(a)(1). Bingham's mental health has no bearing on this general intent crime. Section 1752(a)(1) does not require a defendant to act with a specific bad purpose while trespassing. *See United States v. Jabr*, No. 18-0105 (PLF), 2019 WL 13110682, at *13 (D.D.C., May 16, 2019) (holding that an attempt to violate § 1752(a)(1) requires proof of specific intent "even if the crime attempted does not"). Instead, the government need only prove that the defendant knowingly and unlawfully trespassed in a restricted area; there is no requirement to prove the defendant's subjective state of mind at the time. Because any diminished capacity evidence cannot negate the general intent required by § 1752(a)(1) and § 111(a)(1), the Court should preclude the defense as applied to those charges.[3]

### III.    LAY WITNESS TESTIMONY REGARDING DEFENDANT'S MENTAL HEALTH IS INADMISSIBLE.

Because the defense failed to notice an expert witness, any testimony about Bingham's mental health can only come from a lay witness. But lay witnesses cannot provide the limited scope of mental health testimony allowed under the IDRA and the Federal Rules of Evidence. *See Childress*, 58 F.3d at 728 (finding that even when mental health evidence is admissible to negate specific intent, the expert's testimony must be limited to "[the expert's] diagnoses, the facts upon which those diagnoses are based, and the characteristics of the mental diseases or defect the expert believes the defendant possessed during the relevant time period, staying clear of directly or indirectly opining on the [ultimate] issue of specific intent."). Bingham's mental condition and how it affected him at the time of the alleged offenses is not the proper subject of lay opinion testimony under Federal Rule of

---

[3] Any general evidence of Bingham's mental health would also likely lack a sufficient connection to his specific intent to obstruct law enforcement under 18 U.S.C. § 231(a)(3) and disrupt government business under 18 U.S.C. § 1752(a)(2) and 40 U.S.C. § 5104(e)(2)(D).

Evidence 701, which requires "scientific, technical, or other specialized knowledge." Any lay witness testimony regarding Bingham's mental health is therefore inadmissible. Such testimony is nothing more than an effort to introduce mitigating mental health evidence about Bingham's background and hardships before the jury. While such evidence may be relevant at sentencing, it should be excluded at trial because it fails the requirements of the IDRA and the Federal Rules of Evidence.

## IV.   MENTAL HEALTH EVIDENCE WOULD CONFUSE AND MISLEAD THE JURY.

The Court should still exclude any mental health evidence for the additional reason that it would confuse and mislead the jury. Federal Rule of Evidence 403 permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing the issues [or] misleading the jury." Testimony about a defendant's mental disease is prone to such abuse because it misleads the jury into concluding "that the defendant was temporarily insane, that the disease caused the defendant to commit the crime or otherwise impaired her ability to exert volitional control, or that the disease impaired the defendant's ability to reflect on the consequences of her conduct." *Dupre*, 339 F. Supp. 2d at 540-41. Courts are therefore within their discretion to exclude such testimony where, as here, it presents "a dangerously confusing theory of defense more akin to justification and excuse." *Childress*, 58 F.3d at 730; *see also Schneider*, 111 F.3d at 203 ("impaired judgment" evidence would "mislead the jury into thinking that such a medical condition amounts to temporary insanity or ameliorates the offense"); *Dupre*, 339 F. Supp. 2d at 544 (excluding mental health report "for its capacity to mislead and confuse the jury, and to permit the defendant to put an impermissible theory of justification").

For example, in *United States v. Rogers*, the defendant was an attorney charged with the specific intent crime of mail fraud.  The defense proffered expert testimony about the defendant's "predispositions based on his history and life experiences." 2006 WL 5249745, at *2. This court observed that, even "where evidence of a mental state is relevant to negate an element of specific

intent, the court must not admit evidence that would cause undue prejudice or confusion." *Id*. at *16. In excluding the proffered testimony, this court held that the expert's "opinions concerning Rogers' capacity and susceptibility could easily mislead the jury into exactly the kind of diminished capacity defense that the [IDRA] sought to forbid, and that risk substantially outweighs the testimony's limited relevance. . . It may well be that Rogers was working beyond capacity, but that goes no distance toward negating the proposition that he could and did intentionally make the affirmative misrepresentations alleged in the indictment with the intent to deceive." *Id.* at *18.

The same is true here. Bingham's mental health has no bearing on the general intent crimes of assaulting a law enforcement officer and trespassing in a restricted area. *See United States v. Armstrong*, No. 07-cr-26-SJM, 2010 WL 4275232, at *8 (W.D. Pa. Oct. 25, 2010) (excluding evidence of bipolar and personality disorders because it would confuse the jury "by sidetracking them with evidence of the Defendant's mental disorders which, by definition, have no bearing on the mens rea at issue in this case"). To the extent Bingham's mental health has any relevance to his mens rea, its probative value is substantially outweighed by the risk of misleading or confusing the jury. Indeed, the jury may believe that Bingham's condition caused him to commit assault or somehow caused him to lose volitional control over his actions. This is tantamount to a theory of excuse or justification, which Congress sought to forbid in passing the IDRA. Because evidence of Bingham's mental health would mislead and confuse the jury, the Court should exclude any diminished capacity evidence under Federal Rule of Evidence 403.

## CONCLUSION

For these reasons, the United States respectfully requests that the Court preclude Defendant from offering any evidence relating to his mental health or a diminished capacity defense.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
DC Bar No. 481052

By:      /s/ Jake E. Struebing
JAKE E. STRUEBING
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, DC 20530
D.C. Bar No. 1673297
(202) 252-6931
Jake.Struebing@usdoj.gov

CHRISTOPHER D. AMORE
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
Detailee, Capitol Siege Section
601 D Street, N.W.
Washington, DC 20530
N.Y. Bar No. 5032883
(973) 645-2757
Christopher.Amore@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on March 20, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification to all counsel of record.

By:      */s/ Jake E. Struebing*
JAKE E. STRUEBING
Assistant United States Attorney
601 D Street, N.W.
Washington, DC 20530
D.C. Bar No. 1673297
(202) 252-6931
Jake.Struebing@usdoj.gov