UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 22-cr-92 (DLF) |
| v. : | |
| : | |
| BRIAN GLENN BINGHAM, : | |
| : | |
| Defendant. : | |

### UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS TO GOVERNMENT EXHIBIT LIST

The United States respectfully submits this response to Defendant Brian Bingham's objections to the Government's Exhibit List. *See* ECF No. 123. The government intends to introduce certain videos, including U.S. Capitol Police CCTV, Metropolitan Police Department body worn camera, videos taken by other people at the Capitol at trial. The overwhelming majority of the government's proposed video exhibits depict the defendant and the defendant's actions on January 6, 2021. The few exhibits that do not capture the defendant are relevant because they show that a civil disorder occurred on January 6, 2021, as that term is used in 18 U.S.C. § 231(a)(3), and because they show that Capitol grounds were posted, cordoned off, or otherwise restricted, as required for the charges under 18 U.S.C. § 1752. The defendant's objections therefore lack merit, and the Court should reject them for the reasons discussed below.[1]

**I.  Government Exhibit 101**

Government Exhibit 101 is a 40-minute video recorded from a CCTV camera located above the East Front or Upper House Door showing the events occurring there between 2:20 and 3:00 PM, including Bingham's entry into and exit out of the Capitol. The Government has no intention of

---

[1] As discussed below, several of the defendant's objections are now moot because the Government has agreed to play only certain exhibit subparts or clips for the jury depicting the relevant offense conduct. But the government does not concede that the full exhibits are irrelevant, prejudicial, or otherwise inadmissible.

playing Government Exhibit 101 in its entirety for the jury. Rather, the Government only intends to use the three segments of the video noticed as Government Exhibits 101A.1, 101A.2, and 101A.3. These segments show events relevant to the defendant's case and their probative value far outweighs any prejudice.

Government Exhibit 101A.1 is approximately 6 minutes long and shows the events outside the East Front House Door, during which Bingham was present. These events are highly probative of Bingham's knowledge that the Capitol was a restricted area. The defendant has no objection to this exhibit.

Government Exhibit 101A.2 is only 54 seconds long. The defendant appears at the 43-second mark and enters the Capitol at that time. According to the defendant, the jury should not see the first 38 seconds of this clip; hardly "well before" the defendant's appearance in the video as the defendant asserts. *See* ECF No. 123 at 5. As the defendant correctly points out, within the first 38 seconds of the video, the jury would be able to see the door being opened. These 38 seconds provide valuable context as to how the defendant gained entry to the Capitol, and thus are relevant. Notably, the first 38 seconds do not show any acts of violence or property destruction by other rioters. Thus, to the extent the defendant argues that showing "subversive activities" of others is prejudicial (it is not), as he does with Government Exhibit 111, no such argument exists here. The jury should be allowed to view the 54-second clip in its entirety to understand how the defendant entered the building and the circumstances surrounding his entrance.

Government Exhibit 101A.3 is 2 minutes and 19 seconds long. It shows the defendant exiting the Capitol Building at the 51-second mark. At approximately the 1:02 mark, the defendant and other rioters appear to get sprayed with riot control spray, and the defendant disappears from the view of the camera. The Government has no objection to playing only 00:46 to 1:02 elapsed for the jury, as the defendant requests. But the Government does not concede that the remaining parts of Government

Exhibit 101A.3 are irrelevant or prejudicial.

## II. Government Exhibit 102

Government Exhibit 102 is a 20-minute video recorded from a CCTV camera located in the corridor of the Upper House Door and facing away from the door. It shows the events occurring there between 2:40 and 3:00 PM. The video shows Bingham's movement shortly after entering the Capitol, a civil disorder inside the Capitol, Bingham's inclusion in the mob causing the civil disorder, his confrontation with Metropolitan Police Officers, and his assault of Officer Agyeman. Like Government Exhibit 101, the Government has no intention of playing Government Exhibit 102 in its entirety, but rather will use the two segments noticed as Government Exhibits 102A.1 and 102A.2.

The defendant's only objection is to the last three minutes (from 2:57 to 3:00 PM) of Government Exhibit 102. Neither Government Exhibit 102A.1 nor Government Exhibit 102A.2 include the portion that the defendant is objecting to.

## III. Government Exhibit 103

Government Exhibit 103 is a 20-minute video recorded from a CCTV camera also located in the corridor of the Upper House Door but facing towards the door. It shows the events occurring there between 2:40 and 3:00 PM, including Bingham's entry and exit through the Upper House Door, the civil disorder in the corridor, Bingham's inclusion in the mob causing the civil disorder, his confrontation with Metropolitan Police Officers, and his assault of Officer Agyeman.

Here, too, the Government has no intention of playing Government Exhibit 103 in its entirety. The Government has broken the exhibit into two subparts, which have been noticed as Government Exhibits 103A.1 and 103A.2.

Government Exhibit 103A.1 is only 50 seconds long and shows the defendant entering the Capitol at the 33-second mark. The defendant argues that the 33 seconds prior to his entry, which shows the door being opened by rioters from the inside, "is not relevant and is unduly prejudicial."

ECF No. 123 at 7. However, Count Three of the Indictment charges the defendant with entering and remaining in a restricted building or grounds. Thus, the jury must find that the defendant knowingly entered a restricted building to convict him of 18 U.S.C. § 1751(a)(1). The fact that the door the defendant walked through was locked and had to be forced open by rioters from the inside just 33 seconds prior to his entry is probative of his knowledge that the Capitol was restricted at the time he entered. Accordingly, all 50 seconds of Government Exhibit 103A.1 should be played for the jury.

Government Exhibit 103A.2 is 3 minutes and 39 seconds long and shows the efforts of the MPD officers to clear the mob from the corridor. Beginning at the 1:06 elapsed or 2:56:06 PM mark, the video shows Bingham's confrontation with the officers and his eventual assault of Officer Agyeman. At approximately the 1:55 elapsed mark, the defendant is ejected from the Capitol and disappears from the video. The defendant asserts that only 00:43 to 1:59 is relevant. But the preceding 00:43 seconds shows rioters complying with police commands to exit the building, which provides crucial context for Bingham's non-compliance and rebuts any defense that Bingham was trying to leave but could not. Finally, the additional footage after Bingham is forced out of the building (until about 2:28 elapsed or 2:57:23 PM) is relevant to show the continuing civil disorder and how officers struggled to secure the doors in the wake of Bingham's assault.

**IV.   Government Exhibit 104**

Government Exhibit 104 is 27 minutes and 45 seconds long. It is the body-worn camera footage from Officer Agyeman, who is the victim in this case. Like the previous exhibits, the Government has no intention of playing Government Exhibit 104 in its entirety. The Government only intends to use Government Exhibits 104A.2 and 104A.3 at trial. These exhibits are shorter versions at approximately 6 minutes and 41 seconds and 2 minutes and 29 seconds, respectively.

According to the defendant, Government Exhibit 104 and its subparts should be limited to the confrontation involving Bingham because the other footage is irrelevant, prejudicial, and cumulative.

*See* ECF No. 123 at 9. Not so. The footage is extremely relevant and the probative value substantially outweighs any prejudice. The footage is also not cumulative because it shows the unique vantage point of Officer Agyeman as he gave rioters verbal commands to "move" and pushed rioters toward the exit—which is not captured in Government Exhibits 106 and 107. Indeed, the footage provides valuable context for Officer Agyeman's actions and the actions of his fellow officers as they cleared rioters out of the area near the Speaker's Lobby.

From approximately 2:51:03 to 2:53:33 PM, the footage shows Officer Agyeman arriving at the Capitol and getting into formation with his fellow Civil Disturbance Unit ("CDU") 23 officers. During this time, the footage captures rioters hurling insults at the officers, including one person who says, "fucking pigs." This evidence demonstrates the aggressive and confrontational nature of the mob and the dangerousness of the situation. And it explains why the officers employed physical force to control the mob and push people toward the exit. Excluding this evidence would be improper because it would force the Government to sanitize its case, hiding from the jury's view the true nature of the mob, which the defendant elected to join, outside the Speaker's Lobby. *See United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998) (Rule 403 does not require the government "to sanitize its case, to deflate its witnesses' testimony or to tell its story in a monotone"). From 2:53:33 to 2:55:50 PM, the footage shows Officer Agyeman and other officers using their batons to push rioters toward the exit, chanting in unison, "MOVE BACK" and "MOVE." Indeed, Officer Agyeman will testify that some rioters complied with commands to move, while others did not. From 2:55:50 to 2:56:55PM, the footage depicts Bingham engaging Officer Agyeman in an altercation. The officers are then able to secure the area shortly thereafter by 2:57:13 PM. The Government will only seek to admit Government Exhibits 104A.2 and 104A.3 (which end at 2:57:13 PM and 2:57:00 PM, respectively).

## V. Government Exhibit 105

Government Exhibit 105 is body-worn camera footage from Officer Hussain, who was standing directly next to Officer Agyeman at the time of Bingham's assault. Bingham does not even explain what the "irrelevant and prejudicial footage" is in the full version of Government Exhibit 105. ECF No. 123 at 10. For the same reasons described above, Officer Hussain's footage provides key context leading up to Bingham's assault on Officer Agyeman.

## VI. Government Exhibit 107

Government Exhibit 107 is a nine minute and 30 second video taken by a rioter at the Capitol. It is broken into two subparts: Government Exhibit 107A.1 which highlights the defendant in a yellow circle and Government Exhibit 107A.2 which highlights the defendant in a yellow a circle and certain aspects of his assault. The video contains the watermark "Insurgence USA" in the lower righthand corner. Without conceding that the defendant's objection has merit, the Government agrees to blur this watermark at trial.

## VII. Government Exhibit 108

Government Exhibit 108 is a one minute and seven video taken by a third party titled, "Benjamin Reports." The video depicts Bingham's conduct outside the East Front House Doors prior to his entry into the Capitol. This exhibit and its subparts are highly probative of Bingham's knowledge of the restricted area, his intent to obstruct police, and his disorderly conduct. The footage shows Bingham joining a mob outside Upper House Doors. Bingham proceeds to confront and yell at U.S. Capitol Officers guarding those doors. And he later approaches the threshold of the doors directly behind another rioter who attempts to enter the Capitol by smashing the windowpanes. The government has no objection to excluding that last two seconds in Government Exhibits 108, 108A.1 and 108A.3, which show an unrelated incident outside the range of the CCTV footage.

**VIII.     Government Exhibit 111**

Government Exhibit 111 is the body-worn camera from then-Lieutenant Mancuso, who was Officer Agyeman's commanding officer on January 6, 2021. The government does not intend to introduce this exhibit into evidence during its case. The government reserves the right, however, to call Inspector Ashley Varvounis (née Mancuso) as a rebuttal witness and introduce her body-worn camera footage to prove her presence near the East Front House Doors.

**IX.     Government Exhibits 303, 304, and 305**

Government Exhibits 303, 304, and 305 are photographs of "area closed" signs and fencing assembled around the Capitol on January 6, 2021, to designate the restricted perimeter. Bingham claims that these photographs are not relevant because there is no indication that he "saw this signage." ECF No. 123 at 15. But he nonetheless concedes that the photographs have relevance in demonstrating that "the Capitol was closed to the public on January 6, 2021." Signage and barricades, regardless of whether Bingham saw them, are part of the government's proof that a restricted area existed at the Capitol on January 6, a predicate fact for the defendant's liability under 18 U.S.C. §§ 1752(a)(1) and (2). While Bingham's ultimate liability under those statutes will depend on his knowledge that the area was restricted, the government must also prove that the area was in fact restricted in the first place, and evidence such as barriers and signage is a foundational part of its case on that element.[2]

---

[2] The defendant states that he will stipulate to the fact that the Capitol was closed on January 6, and therefore Government Exhibits 303, 304, and 305 are needlessly cumulative. The government has not received any signed stipulation to date. In any event, the government understands that Federal Rule of Evidence "prevents the government from showing the jury so many videos that they become needlessly cumulative or that run the risk of confusing the jury about what acts [this defendant is] responsible for." *United States v. Nordean*, No. 21-cr-175 (TJK), Oral Ruling at 58:13-17 (Dec. 14, 2022). Aside from establishing basic facts about the restricted perimeter and the riot—to prove the elements of the charges in this case—the government plans to focus its case on the areas where the defendant was, during the time he was there.

7

X.     **Government Exhibit 308**

Government Exhibit 308 is a 15-minute compilation video providing an overview of the damage and violence at the U.S. Capitol on January 6, 2021. Bingham objects to this exhibit because it would purportedly encourage the jury to hold him responsible for the actions of others on January 6, 2021. *See* ECF No. 123 at 14. But that objection misses the mark. The exhibit provides crucial context for the events of January 6. *See United States v. Crawford*, No. 23-cr-526 (JEB), 2024 WL 1908799 (D.D.C. May 1, 2024) (admitting compilation video and explaining that the "government must generally be given leeway to place a defendant's actions into context and to assist the jury in organizing and evaluating evidence that is factually complex and fragmentally revealed" (cleaned up)); *see also United States v. Stedman*, No. 21-cr-383 (BAH), 2023 WL 3303818, at *1 (D.D.C. May 8, 2023) ("general evidence about the events on January 6—even if defendant did not personally observe all of the conduct engaged in by others in multiple parts of the Capitol Building and restricted grounds—assists the jury in better understanding the parties' actions that day and thus the alleged criminal conduct of defendant.").

The specific charges that Bingham faces also require general evidence of the events of January 6, 2021. First, the compilation video is highly probative of the existence of a civil disorder, which the government must prove under Count One (18 U.S.C. § 231(a)(3)). A civil disorder is defined as "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. § 232(1). Thus, the video's depiction of destruction and assaults on law enforcement—including on the east side of the Capitol where Bingham entered the restricted area—is part of the government's proof that a civil disorder existed within the meaning of section 231(a)(3).

Second, to convict Bingham on Count One, the government must also prove that the civil disorder—not Bingham himself—obstructed, delayed, or adversely affected a federally protected

8

function, such as the U.S. Capitol Police's protection of the Capitol and its occupants. *See* 18 U.S.C. § 231(a)(3). This element intrinsically broadens the scope of relevant evidence beyond the Bingham's conduct to the conduct of the civil disorder's other participants. The jury is therefore entitled to receive evidence of how the riot disrupted federally protected functions, including the protection of the Capitol and the Vice President.

Third, as courts in this district have explained, "the rioters' collective action is relevant to proving that Defendant disrupted Congress" in violation of 18 U.S.C. § 1752(a)(2) and 40 U.S.C. § 5104(e)(2)(D), which Bingham is charged with in Counts IV and V. *United States v. Zink*, No. 21-cr-191 (JEB), 2023 WL 5206143, at *3 (D.D.C. Aug. 14, 2023). Contrary to Bingham's assertions, the compilation video does not "sweep too broadly" in terms of showing disruption to government functions over the course of the day on January 6. ECF No. 123 at 15. Specifically, Bingham claims that he "cannot be held responsible for any disruption occurring before or after he arrived." *Id.* The testimony at trial will show, however, that Congress could not resume its work until every single unauthorized individual, including the defendant, was removed from the Capitol building and surrounding grounds. By entering the restricted area and assaulting a police officer, Bingham incrementally increased the chaos in the building, making it more difficult for the police to restore order and directly contributing to the disruption of Congress' work—even if he only remained there for approximately twenty minutes. *See United States v. Alford*, 89 F.4th 943, 953 (D.C. Cir. 2024) ("[Defendant's] entry into the Capitol—alongside dozens of others—directly contributed to the Congress's need to recess to ensure the safety of its members. Indeed, entering the Capitol as part of a crowd rather than as a lone individual magnified the disruptiveness of his presence. Each additional person, no matter how modestly behaved, increased the chaos within the building, the police's difficulty in restoring order and the likelihood of interference with the Congress's work"); *United States v. Rivera*, 607 F. Supp. 3d 1, 9 (D.D.C. 2022) (defendant disrupted Congress by contributing

to overall riot that "collectively disrupted Congressional proceedings").

Finally, the defendant objects to Government Exhibit 308 because it contains "radio chatter" or "radio runs" from the U.S. Capitol Police. Those radio runs—which describe the movements of the rioters and the various breaches of police lines as they happened—are quintessential present sense impressions and excited utterances. *See* Fed. R. Evid. 803(1), (2). Police officers made those statements while or immediately after perceiving the events described. *See Flythe v. District of Columbia*, 4 F. Supp. 3d 222, 233-34 (D.D.C. 2014) (finding that police radio run transmission was admissible under Fed. R. Evid. 803(1) and 803(2)); *United States v. Campbell*, 782 F. Supp. 1258, 1262 (N.D. Ill. 1991) (police radio statements made while chasing and arresting suspect constituted present sense impressions). The radio chatter may also be admitted for non-hearsay purposes, including to show context and what prompted the police response on January 6.

## XI. Government Exhibit 309

Government Exhibit 309 is a one-minute time lapse of CCTV footage depicting the East Plaza of the Capitol from approximately 1:56 to 2:11 PM. Like Government Exhibit 308, this footage goes to the existence of a civil disorder and the disruption of government functions. Specifically, Government Exhibit 309 depicts the evacuation of the Vice President's motorcade at 1:59 PM and the breach of the police line on the East Plaza seconds later. The exhibit also shows the breach of a second police line at 2:06 PM, which led to a mob of hundreds of people congregating outside the Rotunda Doors. All of this occurred in close proximity (both temporally and spatially) to Bingham, who entered the restricted area on the east front about twelve minutes later.

## XII. Government Exhibits 502, 503, and 504

Government Exhibits 502, 503, and 504 are two recordings and the transcript from the defendant's custodial interview on June 22, 2021. The government does not intend to introduce these exhibits during its case-in-chief and will use them only for potential impeachment or rebuttal

purposes.

### XIII. Government Exhibit 509A

Government Exhibit 509A is a map dated June 25, 1946, depicting the official United States Capitol grounds. This exhibit is relevant to show the jury what constitutes Capitol grounds for purposes of the Court's jury instruction for Count Five (40 U.S.C. § 5104(e)(2)(D)). *See* ECF No. 114 at 32.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
DC Bar No. 481052

By:     */s/ Jake E. Struebing*
JAKE E. STRUEBING
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, DC 20530
D.C. Bar No. 1673297
(202) 252-6931
Jake.Struebing@usdoj.gov

CHRISTOPHER D. AMORE
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
Detailee, Capitol Siege Section
601 D Street, N.W.
Washington, DC 20530
N.Y. Bar No. 5032883
(973) 645-2757
Christopher.Amore@usdoj.gov